Laramore, Judge,
delivered the opinion of the court:
This is a suit by a private vocational institution for educational services rendered World War II veterans under Public Law 346, 78th Cong., the Servicemen’s Readjustment Act of 1944, 58 Stát. 287. The facts are as follows :
Plaintiff, a Pennsylvania corporation, is a private vocational school conducting courses in watchmaking and chron *541 ograph. assembly and repair at Pittsburgh, Pennsylvania. Its president and principal stockholder is Mr. William O. Smith, Sr. On December 20, 1948, plaintiff applied to the Pennsylvania Department of Public Instruction for approval of a 22-week course of instruction in maintenance and repair of chronographs. This action was taken in order for plaintiff to become eligible to furnish education and training to veterans under the Servicemen’s Readjustment Act of 1944, supra, and also to provide vocational rehabilitation of disabled veterans under Public Law 16,78 th Cong., 57 Stat. 43.
On January 10,1949, plaintiff was approved by the Pennsylvania Department of Public Instruction to offer instruction in “Chronograph maintenance and repair” for a term of 22 weeks. Notice of this fact was given to the branch office director, Yocational Rehabilitation and Educational Division, Veterans Administration, Philadelphia, Pennsylvania.
Effective January 14,1949, plaintiff and the Veterans Administration by its contracting officer at Pittsburgh entered into Contract No. V3011V-274, whereby plaintiff agreed that from January 17,1949, through May 31, 1949, it would provide instruction and the necessary books and supplies to approved veterans, and in turn defendant agreed to compensate plaintiff as set forth in Schedule I of the contract. By renewal agreement the contract was extended to June 30, 1949.
Schedule I of the contract read in part as follows:
Western Pennsylvania Horologicdl Institute, Inc. Course:
Chronograph Repairing and Adjusting.

Course Outli/ne:

See Schedule 1, Pages 2,3,4, and 5.
Part-time instruction shall be for a total of five hundred fifty (550) hours as shown on attached curriculum, however, the course shall be extended to forty-six (46) weeks.

Length of Course:

Full-time; twenty-two (22) weeks.
Part-time; forty-six (46) weeks maximum.

Tuition:

Six hundred and nine dollars and fifty cents ($609.50).

*542
School Galendar:

Legal holidays will be observed.
Full-time; five (5) days per week, five (5) hours per day.
Part-time; three (3) days per week, four (4) hours per day.
Schedule I of the contract also provided that plaintiff was to be compensated by defendant in the sum of $13.40 for tools and materials and in the further sum of $150 for a set of 22 chronograph books, to be issued to each student. The total agreed charge per student was accordingly $772.90 for the course.
Article 2(e) of the contract provided:
(e) The Contractor agrees that in no event will the Veterans Administration pay on account of a Public. Law 346 veteran more than $500 for an individual course of less than 30 weeks. The Contractor also agrees that the Veterans Administration will not pay customary charges for any course on account of any veteran enrolled under Public Law 346 more than the rate of $500 for a full-time course for an ordinary school year, unless the veteran elects to have charges paid in excess of such limitation and to have his period of eligibility charged proportionately.
Each of the veterans enrolled in plaintiff school agreed by endorsement on their Certificate of Eligibility and Entitlement that if the customary charges for the course exceeded $500 for full time course in an ordinary school year then the Veterans Administration could charge their entitlement an additional day for each $2.10 of such excess costs. The school endorsed on each certificate that the estimated total customary charges for the course would be $771.20. Imediately following the space provided for this endorsement of the school appeared the following statements:
note. — If customary charges exceed $500 for full-time course for ordinary school year, the Veterans Administration cannot pay the excess unless veteran elects by an affirmative answer to item 12, to have his entitlement charged accordingly. The Veterans Administration cannot pay more than $500 for any course of less than 30 weeks. If veteran pursues flight training in connection with academic course, full details must be attached hereto.
*543 On or about June 27, 1949, plaintiff was notified by the Veterans Administration that the contract was considered in violation of statutory law and regulations in that the total contract price for a course of less than 30 weeks exceeded the sum of $500. Plaintiff was advised that no payments in excess of $500 could be made. Thereafter excess payments already made were recouped from amounts otherwise due the plaintiff. The amounts so withheld have been stipulated by the parties to be the total sum of $22,354.63.
After the expiration of the contract on June 30, 1949, the plaintiff and the Veterans Administration entered into negotiations for a new contract. Pending the execution of a new contract the parties agreed by memorandum that plaintiff would continue to accept approved veterans for instruction, and that plaintiff would be entitled to compensation for the services from July 1, 1949, at rates mutually agreed upon in a contract to be executed later.
In an apparent effort to solve the problem of the $500 limitation on a course of less than 30 weeks, Mr. Smith wrote a letter to the Pennsylvania State Board of Private Trade Schools, the successor of the State agency which had originally approved the 22-week course, requesting that the 22-week course be divided into two courses and that approval of this change be made retroactively. The letter stated that the purpose of the change was to get around the $500 maximum payment for one course and that this was desired by the Veterans Administration. On August 18, 1949, the Board voted approval of Mr. Smith’s request designating the course at the school as Chronograph Watch Course 1 and Chronograph Watch Course 2. This action was made retroactive to December 22, 1948. The Trial Commissioner who heard the evidence in this case found as a fact that no credible evidence showed that the Veterans Administration ever suggested such a change and no evidence was presented to the Board as to the character of the plaintiff’s course. It should also be noted that Mr. Smith was himself a member of the Board and that it was not their general policy to provide for retroactive changes in courses.
Conferences were had between plaintiff’s president and the Veterans Administration relative to the charges made under *544 the first contract at which time the Veterans Administration remained steadfast in its position that no payment could be made in excess of $500 for the school’s course. Plaintiff was told in a conference in Washington on December 29, 1949, that he should file a reclaim voucher with the Comptroller General for the amounts withheld under the first contract and that the Veterans Administration would recommend its approval. The claim was subsequently disapproved by the Comptroller General.
On January 23, 1950, pursuant to authorization from Washington, the plaintiff and the Veterans Administration entered into Contract No. V8011V-462 covering the period from July 1, 1949, to June 30, 1950. The contract actually bore the date of September 19,1949. In accordance with the State Board’s approval plaintiff’s course was divided into two parts of 11 weeks each and plaintiff was to receive $468.65 per student for all charges incident to the combined courses. Unlike the first contract the necessary books were not to be given the students but were to be made available in the school’s library for which the school would receive $20 per student as rental fee which was included in the $468.65.
The Trial Commissioner has found that plaintiff’s 22-week course of instruction in chronograph maintenance and repair is in reality one course and the division of the course into two was arbitrarily accomplished in an effort to avoid the effect of the $500 minimum for one course. The plaintiff has taken exception to this finding but the court is of the opinion that the credible evidence presented by the record in this case clearly supports the finding of the Trial Commissioner.
There is no question but that the law and regulations under which plaintiff received compensation for the schooling of veterans prohibited any payment by the Veterans Administration or its agents of amounts in excess of $500 for a course less than 30 weeks.[1] Plaintiff, however, claims it is entitled *545 to a return of $22,354.63 representing the excess of the first contract price over the $500 limitation which was recouped by defendant on the alternative grounds of (1) quantum meruit and (2) that the 22-week course was in fact two 11- *546 week courses which, would authorize payments not exceeding $500 as to each. In addition to its claim under the first contract, plaintiff contends that from July 1,1949, to December 31, 1949, while the second contract was being negotiated, it was entitled to the tuition schedule of the first contract. This claim is apparently based on a theory of quamtvm meruit also, since the second contract entered into on January 23, 1950, covered this period at a rate of $468.65 per student for which plaintiff has been paid. We can see no basis for plaintiff’s recovery under any of its claims or theories.
As to the first contract, it is indeed regrettable that an agent of the Veterans Administration entered into a contract which was prohibited by law and regulation. Plaintiff may well have suffered costs over and above its compensation, but this fact alone is not sufficient to allow recovery. The law is well settled that where funds are paid out by agents of the Government in excess of their legal authority the Government has the right, and indeed the duty, to seek repayment either by withholding funds owing the recipient or by an action at law. See Wisconsin Central R. Co. v. United States, 164 U.S. 190, and cases cited therein. It was incumbent upon plaintiff to determine the extent of the authority of the agent who signed the contract for the Veterans Administration and the Government is not bound by acts of its agents in excess of their statutory authority. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380.
In an. attempt to defeat the $500 limitation for a course of less than 30 weeks plaintiff had a State Board retroactively designate his course as being two 11-week periods of instruction. We believe this action was without effect. We have found that there was in fact only one course and this for a period of 22 weeks for which the law provides a maximum compensation of $500. Any payments in excess of this figure were unauthorized and plaintiff may not be heard to complain where such overpayments are subsequently recouped. To allow a recipient to retain funds the payment of which is not authorized by any provision of law would open the. door for various forms of laxity with the funds of the public treasury. It is incumbent upon the courts to be vigilant in their scrutiny of the acts of agents of the Gov- *547 eminent, and where such agents have exceeded their authority we will not hesitate to condemn such unauthorized acts, but also will require the recipient of any unauthorized payment to return same to the public treasury. It follows that no rule of law will permit this plaintiff to recover amounts in excess of that authorized by law.
This same rule of law applies equally to plaintiff’s claim for increased payments for the period July 1, 1949, to December 31, 1949, while the second contract was being negotiated. Both the plaintiff and the Veterans Administration recognized the legal limitation when they finally executed the second contract which provided for payments of less than $500 for the courses of instruction. Since the contract specifically covered the period for which plaintiff makes claim it is bound by the terms thereof.
It necessarily follows that plaintiff’s petition must be dismissed.
It is so ordered.
Danaher, Circuit Judge, sitting by designation; Madden, Judge; Whitaker, Judge, and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Boald A. Hogenson, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff, Western Pennsylvania Horological Institute, Inc., a Pennsylvania corporation, is and was a private vocational training school conducting courses in watchmaking and chronograph assembly and repair at Pittsburgh, Pennsylvania. Its president and principal stockholder is Mr. William O. Smith, Sr.
2. In order to become eligible to furnish education and training to veterans under the Servicemen’s Readjustment Act of 1944, Public Law 346, 78th Congress, and to provide vocational rehabilitation of disabled veterans under Public Law 16, 78th Congress, plaintiff on December 20, 1948, applied to the Department of Public Instruction, Division of Private School Registration, Commonwealth of Pennsylvania, for approval of á 22-week course of instruction in *548 maintenance and repair of chronographs and complicated watches.
By letter dated January 25,1949, the Pennsylvania Department of Public Instruction advised the branch office director, Vocational Rehabilitation and Educational Division, Veterans’ Administration, Philadelphia, Pennsylvania, that it had approved plaintiff to offer instruction in “Chronograph — Maintenance and Repair” for a term of 22 weeks, the approval being effective January 10, 1949, and to remain in effect until notification to the contrary.
3. Public Law 846, 78th Congress, approved June 22,1944, 58 Stat. 284, as amended by Public Law 268, 79th Congress, 59 Stat. 624, provided that a certain paragraph of Veterans Regulation numbered 1 (a) was amended to read as follows:
3 (b) Any such eligible person may apply for a short, intensive postgraduate, or training course of less than thirty weeks: Provided, That the Administrator shall have the authority to contract with approved institutions for such courses if he finds that the agreed cost of such courses is reasonable and fair: Provided further, That (1) the limitation of paragraph 5 shall not prevent the payment of such agreed rates, but there shall be charged against the veteran’s period of eligibility the proportion of an ordinary school year which the cost of the course bears to $500, and (2) not in excess of $500 shall be paid for any such course.
The paragraph 5 referred to in the above-quoted provision was also amended to read as follows:
5. The Administrator shall pay to the educational or training institution, for each person enrolled in full time or part time course of education or training, the customary cost of tuition, and such laboratory, library, health, infirmary, and other similar fees as are customarily charged, and may pay for books, supplies, equipment, and other necessary expenses, exclusive of board, lodging, other living expenses, and travel, as are generally required for the successful pursuit and completion of the course by other students in the institution: Provided, That in no event shall such payments, with respect to any person, exceed $500 for an ordinary school year unless the veteran elects to have such customary charges paid in excess of such limitation, in which event there shall be charged against his period of eligibility the *549 proportion of an ordinary school year which such excess bears to $500: * * *
The implementing Veterans Administration Eegulation is contained in 38 C. F. B. Sec. 21.495 (1949 Ed.), 13 F. E. pp. 7215-16 and reads as follows:
§21.495 Amount payable by the Veter am’’ Administration for a course of less than SO weeks, (a) The amount payable by the Veterans’ Administration for a course of less than 30 weeks will not:
(1) Exceed the customary charge.
(2) Exceed $500 total.
(b) The amount payable by the Veterans’ Administration for a course of less than 30 weeks will be based on one of the following applicable conditions:
(1) Customary charge if it has been found to be fair and reasonable in accordance with the provisions of §21.570.
(2) A fair and reasonable charge where the customary charge is determined not to be fair and reasonable.
• (c) If the charges under paragraphs (b) (1) or (2) of this section exceed $500 total, the veteran must pay the excess over $500 to the institution, since the Veterans’ Administration’s payment is limited by law to a maximum of $500.
(d) If the charge under paragraphs (b) (1) or (2) of this section exceeds the rate of $500 (but not a total of $500), the veteran must elect to have his entitlement charged at an accelerated rate or to pay the excess to the institution.
(e) Charges for books, supplies, and equipment to be furnished to the trainee by the institution must be included in or added to the customary charge for purpose of determining whether the total customary charge exceeds the total of $500 or the rate of $500.
38 C. F. E. Sec. 21.503 (1949 Ed.) provides as follows:
§ 21.503 The ordinary school year, (a) The “ordinary school year” for instruction ordinarily given on a semester or quarterly basis is defined as a period of two semesters or three quarters — not less than 30 nor moré than 38 weeks in total length.
(b) The “ordinary school year” for instruction not ordinarily given on a semester or quarterly basis is defined as a period of 34 weeks.
4. Effective January 14, 1949, plaintiff and the Veterans Administration by and through its contracting officer at *550 Pittsburgh, Pennsylvania, entered into Contract No. V3011-V-274, by the terms of which plaintiff agreed that during the period beginning January 17, 1949, and ending May 81, 1949, it would provide instruction and the necessary books, supplies and equipment to approved, veterans, and defendant agreed to compensate plaintiff therefor, as set forth in Schedule I of the contract. Eenewal Agreement No. 1, executed by the same individuals in behalf of the parties in June 1949, provided that this contract was renewed without change of any provisions to extend through but not beyond June 30, 1949.
Schedule I of the contract read in part as follows:
Western Pennsylvania Horological Institute, Ine. Course:
Chronograph Eepairing and Adjusting.

Course Outline:

See Schedule 1, Pages 2,3,4 and 5.
Part-time instruction shall be for a total of five hundred fifty (550) hours as shown on attached curriculum, however, the course shall be extended to forty-six (46) weeks.

Length of Course:

Pull-time; twenty-two (22) weeks.
Part-time; forty-six (46) weeks maximum.

Tuition:

Six hundred and nine dollars and fifty cents ($609.50). School Calendar:
Legal holidays will be observed.
Pull-time; five (5) days per week, five (5) hours per day.
Part-time; three (3) days per week, four (4) hours per day.
Schedule I of the contract also provided that plaintiff was to be compensated by defendant in the sum of $13.40 for tools and materials and in the further sum of $150 for a set of 22 chronograph books, to be issued to each student. The total agreed charge per student was accordingly $772.90 for the course.
Article 2 (e) of the contract provided:
(e) The Contractor agrees that in no event will the Veterans Administration pay on account of a Public *551 Law 346 veteran more than $500 for an individual course of less than 30 weeks. The Contractor also agrees that the Veterans Administration will not pay customary charges for any course on account of any veteran enrolled under Public Law 346 more than the rate of $500 for a full-time course for an ordinary school year, unless the veteran elects to have charges paid in excess of such limitation and to have his period of eligibility charged proportionately.
5. With respect to each veteran enrolled in plaintiff school under the foregoing contract between plaintiff and defendant, a registration officer of the Veterans Administration issued a Certificate of Eligibility and Entitlement. Upon entrance into training, the veteran indorsed on this certificate the date of his commencement of the course. Each certificate form under item 12 asked the enrolling veteran the following question, which each veteran answered in the affirmative: “If customary charges exceed the rate of $500 for ordinary school year, do you wish the Veterans Administration to pay excess costs and to charge your entitlement an additional day for each $2.10 of such excess costs?”
Plaintiff school indorsed on each certificate form that the estimated total customary charges for the course would be $771.20. Immediately following the space provided for this indorsement appeared the following statements:
Nora. — If customary charges exceed $500 for full-time course for ordinary school year, the Veterans Administration cannot pay the excess unless veteran elects by an affirmative answer to item 12, to have his entitlement charged accordingly. The Veterans Administration cannot pay more than $500 for any course of less than 30 weeks. If veteran pursues flight training in connection with academic course, full details must be attached hereto.
Plaintiff rendered services to veterans in accordance with the terms of the foregoing contract.
6. On or about June 27,1949, plaintiff was notified by the Veterans Administration that the foregoing contract was considered to be in violation of statutory law and of the regulations of the Veterans Administration, in that the total contract price for the agreed course exceeded the sum of $500 per student. Plaintiff was advised that no payments in *552 excess of $500 per student could be made. Excess payments already made were thereafter.recouped from amounts otherwise due the plaintiff, and subsequent payments to plaintiff under the foregoing contract were limited to a maximum of $500 per student. The amounts so withheld have been stipulated by the parties to be the total sum of $22,354.63.
7. Upon the expiration of the foregoing contract as extended through June 30, 1949, plaintiff and the Veterans Administration entered into negotiations concerning a new contract. A substantial number of veterans were in attendance at plaintiff’s school, and their courses were partially completed. By memorandum agreement dated July 1,1949, plaintiff and the Veterans Administration by and through the same contracting officer agreed that plaintiff would continue to accept approved veterans for instruction, and that plaintiff would be entitled to receive payment for the services from July 1, 1949, at the rates mutually agreed upon in a contract later to be executed.
8. Mr. William O. Smith, Sr., president of plaintiff school, had been appointed as a member of the newly created Pennsylvania State Board of Private Trade Schools, the successor of the state agency which had originally approved the chronograph course of the plaintiff school. In an apparent effort to solve the problem which had arisen concerning the $500 maximum for a course of less than 30 weeks, Mr. Smith wrote the following letter, dated August 18,1949, to the Board:
It has been brought to my attention by Mr. Weber of the Contract Department, Veterans Administration, Pittsburgh, Pennsylvania, that he had received a letter to the effect that the Veterans Administration in Pittsburgh and Washington erred in the fact of paying over $500.00 for any one course.
This Chronograph Watch Course consisted of twenty-two weeks. It is their desire to have it changed with the Department of Public Instruction to Chronograph Watch Course I and Chronograph Watch Course II; in this case neither one of them will exceed $500.00. In this way it will legalize payments already made, as the students have already been graduated and all monies have been paid to date. This, of course, will affect the new contract, which will be made out the same; namely, Chronograph Watch Course I and Chronograph Watch Course II.
*553 I respectfully request a letter to this effect, so that the local Veterans Administration can answer Mr. Page at Washington so that the past business can be cleared up.
Acting only on the information contained in this letter, the Board on the same day, August 18,1949, voted to designate the chronograph course at plaintiff school as Chronograph Watch Course 1 and Chronograph Watch Course 2, effective December 22,1948. The policy of the Board was to approve changes in courses on the basis of good cause shown. No evidence was presented to the Board as to the character of the plaintiff’s course. The Board relied on the representation in the letter that the Veterans Administration wanted the division into two courses. There is no credible evidence that the Veterans Administration ever suggested or requested that the course be divided. It was not the general practice of the Board to provide for retroactive changes in courses.
9. Between July 1,1949, and December 29,1949, a number of conferences were held between representatives of plaintiff and the Veterans Administration.
On December 29, 1949, Mr. Smith conferred in Washington, D. C., with Mr. A. EL Monk, Director, Training Facilities Service for Vocational Rehabilitation and Education, Veterans Administration, and his Special Assistant, Mr. Frank M. Page. The conferees for the Veterans Administration reiterated the position that payments in excess of $500 per student could not be made for the 22-week instruction and supplies and books furnished by plaintiff to veterans. In the period of time after the expiration of the first contract, from July 1, 1949, to December 29, 1949, plaintiff had continued to operate the course as it had done before, and had issued a set of the 22 books to each student. Mr. Monk and Mr. Page advised Mr. Smith that while the Veterans Administration could not make payments in excess of $500 per student, plaintiff should file a reclaim voucher for the $22,354.63 withheld on the first contract, that the Veterans Administration would give all assistance possible in the preparation of the voucher and the statement in support thereof, and that the claim would be submitted to the Comptroller General with a recommendation for favorable action. *554 It is apparent that Mr. Smith understood that the Veterans Administration could not bind the Comptroller General in his action on the claim, but would recommend payment. Such a recommendation was later made by the Veterans Administration to the Comptroller General.
10. Immediately after this conference, Mr. Page wrote to the Regional Office of the Veterans Administration at Pittsburgh, Pennsylvania, and authorized the execution of a one-year contract to supersede the memorandum agreement under which the parties were operating. This letter, dated December 29,1949, was as follows:
1. A wire was forwarded this date to your office authorizing the execution and distribution of a one-year contract for the 22-week chronograph course offered by the above institution. The rate is to be determined from the revised cost statement, but in no event is it to exceed the total of $500 for the course.
2. Mr. Smith has agreed that no books will be issued after January 1, 1950, for personal possession of the students. If the cost of the books issued prior to January 1, 1950 to the students in the present class can be added into instructional consumable supplies without making the total cost of the course exceed $500.00, it may be done. Books for future use will be added to the library and depreciated at a reasonable rate.
3. In view of the circumstances which has created an overpayment to this institution according to the restrictions of the law, and in view that the services have been rendered in good faith, even though paragraph o of Article 2 of the original contract specifically restricts payment to not more than $500.00 for courses of less than 30 weeks, Mr. Smith has been advised to submit a reclaim voucher for deductions from payments under the original contract. It is requested that your office give all assistance possible in the preparation of this voucher and also in the preparation of his statement in support thereof.
4. Since actual cost experience will show a material reduction in the charges for the period of this contract, Mr. Smith contemplates a proposal to the Comptroller General to adjust the overpayments on. a. compromise basis between the charges under the original contract and that determined to be fair and reasonable for the current contract.
*555 5. It is requested that the completion of this contract be expedited and that your assistance be given to Mr. Smith in preparing his claim.
11. On January 23, 1950, plaintiff and the Veterans Administration acting by and through the same contracting officer at Pittsburgh, Pennsylvania, entered into Contract No. V3011V-462, covering, the period from July 1, 1949, to June 30, 1950. This contract actually bore the date of September 19, 1949. In accordance with the division approved by the State Board, plaintiff’s course was divided into Chronograph Course No. 1 and Chronograph Course No. 2. By the terms of this contract, plaintiff agreed that it would provide instruction and the necessary books, supplies and equipment to approved veterans, and defendant agreed to compensate plaintiff therefor, as set forth in Schedule I of the contract.
Schedule I of the contract is in pertinent part as follows:

Courses:

Chronograph Course Number 1.
Chronograph Course Number 2.

Cowrse Outlme:

Chronograph Course Number 1 — See attached Bulletin.
Chronograph Course Number 2 — See attached Bulletin.

Length of Course:

Chronograph Course Number 1: 275 hours, 11 weeks.
Chronograph Course Number 2 : 275 hours, 11 weeks.
Full-time — Total of combined courses: 550 hours, 22 weeks.
Part-time — Total of combined courses: 550 hours, 46 weeks.

School Calendar:

Legal Holidays will be observed.
Full-time: Five (5) days per week, five (5) hours per day.
Part-time: Three (3) days per week, four (4) hours per day.

Tidtion:

Full-time: Eighty seven dollars and five cents ($87.05) per calendar month or Four hundred thirty five dollars *556 and twenty five cents ($435.25) for five months (550 hours of instruction).
Part-time: Forty one dollars and two cents ($41.02) per calendar month or Four hundred and thirty-five dollars and twenty five cents ($435.25) for 10.61 months (550 hours of instruction).

Books:

Volumes 1 thru 11 cover Chronograph Course No. 1.
Volumes 12 thru 22 cover Chronograph Course No. 2.
It is understood and agreed one complete set (Volumes 1 thru 22) of books will be available in school’s library for every two students enrolled. The fee for this service shall he on a rental basis of $20.00 per student for the complete cov/rse of 550 hours of instruction. In the event a student interrupts before the completion of the course, the rental fee shall be prorated on the basis of actual enrollment.

Tools:

As indicated herein, shall be issued during Chronograph Course Number 1 and the charge will be $13.40. See attached list.
The above charge will be the maximum charge; however, in the event any individual trainee completes his course in less time than that stated in this paragraph, the charges will be prorated to cover only the period of actual attendance. If an individual trainee does not complete a course satisfactorily within the time stated, such instruction as may be necessary to enable the trainee to complete the course will be furnished at no additional cost to the Veterans Administration.
^
It is understood and agreed that the terms of this contract are subject to, and will be governed by the conditions of approval specified by the Department of Public Instruction, Commonwealth of Pennsylvania, as indicated below:
A. Courses Approved and Length Thereof:
Chronograph Number 1: 275 hours, 11 weeks.
Chronograph Number 2 : 275 hours, 11 weeks.
Total combined Courses: 550 hours, 22 weeks.
Part-time combined Courses: 550 hours, 46 weeks.
The total sum of the charges per student to be paid by the Veterans Administration to the plaintiff under this contract was $468.65.
*557 12. From all of the evidence in this case it is found that the plaintiff’s 22-week course of instruction in chronograph maintenance and repair was in fact one course, and that the division of the course into two was arbitrarily accomplished in an effort to avoid the legal effect of the $500 statutory maximum for the course.
13. On or about August 18, 1950, the Central Office of the Veterans Administration wrote to the General Accounting Office the following memorandum entitled “Brief of Facts” with reference to the reclaim vouchers filed by the plaintiff:
Contract V3011V-274 with the westekN PENNSYLVANIA hoRological institute, INC., covered the period from January 17,1949, through May 31,1949, and provided for a Chronograph course of 22 weeks in length at a tuition cost of $609.50, plus tools in the amount of $13.40 and books in the amount of $150.00. By renewal agreement this contract was extended from May 31, 1949, to June 30,1949.
Contract V3011V-462 with the same school covered the period from July 1,1949, to June 30,1950, and provided for the same course at a tuition cost of $435.25, for a book rental charge of $20.00, and for the furnishing of tools in the amount of $13.40. The latter contract was not completed until the early part of January 1950.
Under Veterans Administration regulations set forth in va Manual M7-5, paragraphs 68a (2) and 68 (d) and as provided in Public Law 346, 78th Congress, as amended, Sec. 400 (b), Part VIII 3 (b), payment for a course of less than 30 weeks may not exceed a total of $500.00. Article 2 (e) of each standard educational contract form also contains such a limitation. Notwithstanding the above, the Veterans Administration ^Regional Office in Pittsburgh, Pennsylvania, made payments during the period from January 17,1949, through June 30, 1949, at the contract rate. Becovery of that amount in excess of the $500.00 limitation for each veteran was made and voucher 3011-1962, in the amount of $22,354.63, represents the institution’s reclaim for amounts so recovered. In view of the total course price of $772.90 being specified in the initial contract, it is believed veterans were enrolled thereunder with the understanding that payment for the course would be made by the Veterans Administration. Accordingly, since non-payment of this reclaim will undoubtedly result in the veterans having to pay the difference between *558 $500.00 and the course price, payment of the voucher is recommended.
During the period from July 1,1949, through December 31, 1949, while the second contract was being negotiated, the school continued to accept veterans for training and in the absence of a formal contract continued to furnish the books specified under the initial contract, i. e., the 32 [sic] volumes of the Esembl-O-Graf Library. The contract as finally completed, provided a rental charge of $20.00 for such books for the course rather than for direct furnishing of such items. The contractor, by Bureau Voucher No. 3011-1963 in the amount of $5,876.70, is now claiming payment for those volumes actually issued during the six-month period less credit for rental allowed. Payment of the reclaim would, of course, result in payment in excess of $500.00 for those veterans involved. In view of this, and of the specific contract rental provision, payment is not recommended.
Bureau Voucher No. 3011-47205 is a claim by the contractor for costs which were allegedly not considered in determining the tuition rate under contract No. V3011V-V462 [sic]. Although the voucher contains a statement that permission was given by a Veterans Administration Central Office representative to reclaim such amounts, the statement of the contractor is apparently based on a misunderstanding since there is nothing to substantiate the giving of such advice. Payment of this voucher is, therefore, not recommended.
There is enclosed a letter dated February 24, 1950, to the Veterans Administration Regional Office, Pittsburgh, Pennsylvania, from the Western Pennsylvania Horological Institute, Inc.
The General Accounting Office subsequently issued Settlement Certificates denying plaintiff’s claims.
14. For the period of time July 1, 1949, to December 31, 1949, plaintiff claims to be entitled to recover on the first prayer of Count III of the petition the sum of $10,029.89. This sum represents for the six-month period the difference between the total amount which plaintiff would have received had the tuition rates of the first contract been applied to this period and the total amount which plaintiff actually received by application of the tuition rates of the second .contract to the period.
In addition, plaintiff claims with respect to Count III of the petition that for the period July 1,1949, to December 31, *559 1949, it is entitled to recover the sum of $9,288.20 for the sets of books issued by it to veteran students. This sum represents for the six-month period the difference between the total price of those books at the rate of $150. per set (the rate of compensation under the first contract) and the total amount actually received by plaintiff pursuant to the rental rate provided in the second contract of $20 per student.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and the petition is therefore dismissed.

 Public Law 346, 78th Congress, approved June 22, 1944, 58 Stat. 284, as amended by Public Law 268, 79th Congress, 59 Stat. 624, provided that a certain paragraph of Veterans Regulation numbered 1(a) was amended to read as follows:
“3(b) Any such eligible person may apply for a short, intensive postgraduate, or training course of less than thirty weeks: Provided, That the Administrator shall have the authority to contract with approved institutions *545 for such courses if he finds that the agreed cost of such courses is reasonable and fair: Provided further, That (1) the limitation of paragraph 5 shall not prevent the payment of such agreed rates, but there shall be charged against the veteran’s period of eligibility the proportion of an ordinary school year which the cost of the course bears to $500, and (2) not in excess of $500 shall be paid for any such course.”
The paragraph 5 referred to in the above-quoted provision was also amended to read as follows:
‘‘5. The Administrator shall pay to the educational or training institution, for each person enrolled in full time or part time course of education or training, the customary cost of tuition, and such laboratory, library, health, infirmary, and other similar fees as are customarily charged, and may pay for books, supplies, equipment, and other necessary expenses, exclusive of board, lodging, other living expenses, and travel, as are generally required for the successful pursuit and completion of the course by other students in the institution: Provided, That in no event shall such payments, with respect to any person, exceed $500 for an ordinary school year unless the veteran elects to have such customary charges paid in excess of such limitation, in which event there shall be charged against his period of eligibility the proportion of an ordinary school year which such excess bears to $500: * * *”
The implementing Veterans Administration Regulation is contained in 38 C.E.R. Sec. 21.495 (1949 Ed.), 13 E.R. pp. 7215-16 and reads as follows:
“§ 21.495 Amount payable by the Veterana' Administration for a course of less than SO weeks, (a) The amount payable by the Veterans’ Administration for a course of less than 30 weeks will not:
“(1) Exceed the customary charge.
“(2) Exceed $500 total.
“(b) The amount payable by the Veterans’ Administration for a course of less than 30 weeks will be based on one of the following applicable conditions:
“(1) Customary charge if it has been found to be fair and reasonable in accordance with the provisions of § 21.570.
“(2) A fair and reasonable charge where the customary charge is determined not to be fair and reasonable.
“(c) If the charges under paragraphs (b) (1) or (2) of this section exceed $500 total, the veteran must pay the excess over $500 to the institution, since the Veterans’ Administration’s payment is limited by law to a maximum of $500.
“(d) If the charge under paragraphs (b) (1) or (2) of this section exceeds the rate of $500 (but not a total of $500), the veteran must elect to have his entitlement charged at an accelerated rate or to pay the excess to the Institution.
“(e) Charges for books, supplies, and equipment to be furnished to the trainee by the institution must be included in or added to the customary charge for purpose of determining whether the total customary charge exceeds the total of $500 or the rate of $500.”
38 C.E.R. Sec. 21.503 (1949 Ed.) provides as follows:
“§ 21.503 The ordinary school year. (a) The ’ordinary school year’ for instruction ordinarily given on a semester or quarterly basis is defined as a period of two semesters or three quarters — not less than 30 nor more than 38 weeks in total length.
"(b) The ‘ordinary school year’ for instruction not ordinarily given on a semester or quarterly basis is defined as a period of 34 weeks.”